3:26-mj-00091

**DISTRICT OF OREGON, ss:**                **AFFIDAVIT OF JARRETT MILLER**

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Jarrett Miller, being duly sworn, do hereby depose and state as follows:

## Introduction and Agent Background

1.      I have been sworn by the U.S. Department of Justice Federal Bureau of Investigations (FBI) as a Special Federal Officer authorizing me to exercise the powers of enforcement personnel set forth in Section 878, Title 21, Unites States Code.  I am a Detective with the Multnomah County Sheriff's Office (MCSO) assigned to the Special Investigations Unit (SIU, also referred to as MCSO-SIU) and have been with the Sheriff's Office since September 11, 2017.  I currently hold a Basic and Intermediate Police Officer Certification – accredited by the Oregon Department of Public Safety Standards & Training (DPSST).  I have attended hundreds of hours of police training including the International Narcotics Interdiction Conference, the California Narcotics Officers Conference and Oregon Narcotics Enforcement Conference which have taught the current trends in the illicit drug world, the basic profile of drug traffickers, the handling of confidential informants and more.

2.      During my employment as a sworn law enforcement officer, I have investigated hundreds of criminal incidents.  Those criminal incidents include, but are not limited to: DUII's, assaults, thefts, criminal mischiefs, robberies, burglaries, forgeries, identity thefts, weapons offenses, narcotics offenses, sex offenses, and fugitive apprehension.  I am familiar with criminal investigations and the collection of evidence, which support those criminal investigations and have personally conducted at least 50 drug investigations resulting in warrants being issued, commercial quantities of drugs seized, and felony arrests.  I have become familiar with how drug traffickers operate.

 **Page 1 – Affidavit of Jarrett Miller**

3.      I submit this affidavit in support of a criminal complaint and arrest warrant for Justin Holder (hereinafter "**Justin**"), a white male, with a date of birth of xx/xx/1983 and Crystal Holder (hereinafter "**Crystal**"), a white female, with a date of birth of xx/xx/1990, for committing the felony offenses of:

  a.      Possession with Intent to Distribute 40 grams or more of a Mixture and Substance containing Fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(vi);

  b.      Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C); and

  c.      Unlawful Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c) (hereinafter the "Target Offenses").

4.      I also submit this affidavit in support of a criminal complaint and arrest warrant for **Justin** for committing the felony offense of: Felon in Possession of a Firearm, 18 U.S.C. §§ 922(g)(1) and 924(a)(8) ("Felon in Possession Offense").

5.      For the reasons stated below, I have probable cause to believe, and I do believe, that **Justin** and **Crystal** have committed the Target Offenses and that **Justin** has committed the Felon in Possession Offense.

6.      This affidavit is intended only to show that there is sufficient probable cause for the requested criminal complaint and arrest warrant and does not set forth all of my knowledge about this matter.  The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this

**Page 2 – Affidavit of Jarrett Miller**

investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

///

## Applicable Law

7.    Title 21, United States Code, Section 841(a)(1) makes it illegal to manufacture, distribute, and possess with intent to manufacture or distribute a controlled substance.

8.    Title 18, United States Code, Section 924(c) makes it illegal to possess a firearm in furtherance of a drug trafficking crime.

9.    Title 18, United States Code, Section 922(g) makes it illegal for a person who has been knowingly convicted of a crime punishable by imprisonment for a term exceeding one year to knowingly possess a firearm that has traveled in interstate or foreign commerce.

## Cooperating Defendant

10.    As described in the search warrant affidavit preceding this criminal complaint, this case involves the use of a Cooperating Defendant (CD).  The CD is currently assisting MCSO SIU and has provided actionable information in exchange for favorable consideration on the CD's pending felony criminal drug charges.  No threats, promises or guarantees have been made to gain the CD's cooperation.  The CD has provided information to MCSO SIU against their own penal interests.  The CD has provided me and other investigators with information regarding users and sellers of controlled substances which I know, from my experience as a narcotics officer, to be accurate; but which the CD could not know that I knew.  I have relied upon the CD's information to the extent the CD's information has been corroborated by me or other law enforcement officers

**Page 3 – Affidavit of Jarrett Miller**

as described below.  The CD is a convicted felon and has a criminal history that includes convictions for crimes of dishonesty. [1]

11.     The CD has told me that they have been involved in the drug culture for at least 5 years, and has witnessed the use, sale, and/or manufacture of drugs on at least 50 occasions.  The CD is completely familiar with the common appearance of most illicit drugs, including methamphetamine.  I know the CD to be familiar with controlled substances because the CD has provided me with the controlled substance, methamphetamine, during this investigation.  Said substance has been field tested utilizing a Mobile Detect Test Kit and has reacted positive for the specific controlled substance and, therefore, was found to be as represented by the CD.  The CD has used controlled substances on many occasions, to include the recent past.

### Background of Investigation

12.     Within the past 48 hours members of the Multnomah County Special Investigations Unit (SIU) and the Federal Bureau of Investigations (FBI) contacted and arrested an individual who was in possession of a commercial quantity of methamphetamine.  This individual agreed to cooperate with the investigation and will hereinafter be referred to as the Cooperating Defendant (CD).  I am not disclosing the CD's identity not only because this person is still under investigation by SIU, but to also protect this person from retaliation of the suspect and associates outlined in this affidavit.

13.     The CD told me they purchased the methamphetamine from a male they knew as JC.  The CD told me JC sold commercial quantities of methamphetamine and fentanyl and

---

[1] The above information regarding the CD was disclosed in prior search warrant affidavit.  The search warrant affidavit, however, did not disclose that, prior to CD cooperating in this investigation the CD was investigated for theft-related crimes.  He admitted to those crimes.  The CD provided the information supporting the search warrant affidavit in exchange for favorable consideration related to that offense conduct.  No threats, promises or guarantees have been made to gain the CD's cooperation.  Disclosure of the details of that offense conduct would risk identifying the CD.

**Page 4 – Affidavit of Jarrett Miller**

possessed firearms.  The CD described JC as a skinny male with facial hair who drove a white Jeep.  The CD allowed me to search their phone where I observed the phone number 503-995-9991 was saved under the name JC.  SIU analysts searched the phone number in a data source and discovered the name Justin Holder (XX/XX/1983) was associated with it.  I showed the CD a Multnomah County booking photo of Justin and they told me he was the male they knew as JC.  I searched **Justin** in a law enforcement database and observed he had multiple outstanding felony warrants for eluding police amongst other crimes.

14.    The CD agreed to purchase methamphetamine from **Justin** and contacted him at 503-995-9991 in my presence.  I listened as **Justin** agreed to sell the CD methamphetamine and instructed the CD to meet him at the Holiday Inn (8439 NE Columbia Ct.) where **Justin** was staying.

15.    I instructed members of SIU and the FBI to go to the Holiday Inn to surveil and Detective Beam told me he observed a white Jeep bearing Oregon license plate 227QJA parked in the lot and occupied by a male he positively identified as **Justin**.

16.    I provided the CD MCSO investigative funds to purchase the methamphetamine and searched them for money and drugs and located none.  I drove the CD to the area of the buy location and then followed them to the lot where I observed them greet **Justin** at the Jeep.  I observed the CD and **Justin** walk together into the side door of the hotel and noticed **Justin** was carrying a large black backpack that sagged at the bottom, appearing to contain a weighted or heavy object.  After a short time, Special Agent Visconti told me he observed **Justin** and the CD exit the hotel where Justin walked back to the Jeep.

17.    I followed the CD from the buy location to a meet location where the CD handed me a bag containing a crystalline substance I knew from my training and experience to be

**Page 5 – Affidavit of Jarrett Miller**

methamphetamine.  The CD told me the person who sold them the methamphetamine was **Justin** and he conducted the drug deal in his hotel room on the 4th floor of the hotel.  The CD told me **Justin** took the drugs he sold them out of a large black backpack. I believe that this is the same backpack that I had previously seen him holding.  The CD stated that during the buy they observed a firearm on **Justin's** person.  I searched the CD and located no money or additional drugs.  I later used a Mobile Detect Test to test the suspected methamphetamine which showed presumptive positive for the presence of methamphetamine.

18.    After a short time, a female (identified as **Crystal**) and a minor got into the Jeep and left.  SIU followed.  A short distance from the hotel, **Justin** stopped at the stop light of Columbia Blvd./Lombard Street and turned on the hazard lights as he opened the driver's side door.  Due to **Justin's** history of eluding police, a plan was devised to pin in the Jeep to prevent him from driving away.  Members of SIU and the FBI were wearing their agency issued raid vests and driving undercover police vehicles equipped with police lights and sirens.  Members of SIU and the FBI activated their police lights and pinned in the vehicle where **Justin** and **Crystal** were taken into custody.  The minor sat on a nearby curb.  He was later identified as a runaway juvenile from Florida.  He was later released to family.

19.    Detective Hibbs searched **Justin** and located a loaded Walther 9mm handgun, multiple baggies of suspected fentanyl, multiple large wads of US currency, a cellphone and a Holiday Inn room key card.  SIU searched the Jeep and located two handguns and two containers of suspected fentanyl inside of the black backpack I had observed **Justin** previously wearing, along with four additional cellphones.

20.    I contacted **Justin** and recited Miranda Rights to him.  He refused to speak with me. **Crystal** told SA Visconti that she, **Justin** and the minor were all staying in room 414 at the Holiday

**Page 6 – Affidavit of Jarrett Miller**

Inn.  The minor agreed with this statement.  **Crystal**, who had an outstanding warrant and **Justin** were transported to the Multnomah County Detention Center and booked.

21.    Detective Beam used the key card found on **Justin's** person to confirm it belonged to room 414 and notified me that it worked.  To prevent the potential destruction of evidence I instructed members of SIU and the FBI to clear the room to ensure no other occupants were inside.  Once it was discovered no other occupants were inside of the room SIU and the FBI exited the room and secured it.  No one else was let in or out of the room and detectives stood by as I authored a warrant to search the room.

22.    The warrant was signed by the Unites States Magistrate Judge Jolie Russo on April 2, 2026 at 9:45pm and members of SIU and the FBI searched the hotel room.  The following items of evidence were located and seized:

  a.  Bag of suspected methamphetamine (weighing 434.2g)

  b.  Bag of suspected cocaine (weighing 11.9g)

  c.  Plastic bag of bulk $1 bills totaling $794

  d.  Multiple bindles of US Currency totaling $5,000

  e.  Bag of suspected methamphetamine from purse in bathroom (weighing 275.4g)

  f.  Bag of suspected fentanyl from purse in bathroom (weighing 172.7g)

  g.  Bag of suspected fentanyl from purse in bathroom (weighing 2.3g)

  h.  Bag of suspected fentanyl from purse in bathroom (weighing 15.1g)

      i.  The purse containing items e-h also contained a debit card with Crystal Holder's name on it

  i.  Springfield XD-9 (serial # US135943)

  j.  Smith and Wesson MP-15 (serial # TW91015)

**Page 7 – Affidavit of Jarrett Miller**

k.  M&P FPC 9mm handgun (serial # VC05356)

l.  ATI Summerville 16 .22 cal (serial # A981255)

m.  Waffen Works Woodstock rifle (serial # WW04212)

n.  AR-15 w/ optic and tripod (no serial #)

o.  2 firearm suppressors

p.  10 firearm magazine (4 pistil and 6 rifle)

q.  1 Apple iPad

r.  1 Folder w/ misc. sports cards

23.    All items of evidence were transported to the Sheriff's Office.  I used a Mobile Field Detect Test on a sample of methamphetamine from the bag found in the hotel room (item a) and received a presumptive positive for fentanyl, a Schedule II controlled substance and it weighed a total of 434.2g.  I used a Mobile Field Detect Test on a sample of methamphetamine from the purse found in the hotel bathroom (item e) and received a presumptive positive for methamphetamine, a Schedule II controlled substance and it weighed a total of 275.4g.  I used a Mobile Field Detect Test on a sample of fentanyl from the purse found in the hotel bathroom (item f) and received a presumptive positive for fentanyl, a Schedule II controlled substance and it weighed a total of 172.5g.  I have found these field tests to be reliable with subsequent forensic analysis repeatedly confirming the results.  All items of evidence totaled 9 firearms (5 rifles and 4 handguns), 723g of methamphetamine, 220.7g of fentanyl, 78.3g of cocaine and $18,299 cash.

24.    The items of evidence were lodged in a Sheriff's locker.  The firearms along with some of the methamphetamine, fentanyl and cash are depicted below:

**Page 8 – Affidavit of Jarrett Miller**





25.     I know that fentanyl is a Schedule II controlled substance and an extremely powerful synthetic opioid that is approximately 100 times more potent than morphine and 50 times more potent than heroin.  I know that 2 mg. of fentanyl can be a potentially fatal dose.  I know that fentanyl traffickers regularly buy and sell bulk fentanyl powder.  I know a typical user of fentanyl will either buy powdered fentanyl or counterfeit M30 pills and that they will then burn it on a piece of tin foil and inhale the smoke.  Fentanyl users typically possess lighters, pieces of foil, and sometimes straws or small pipes that they have been using to consume the fentanyl.  Sometimes a user will simply ingest the pills or inhale the powdered fentanyl.  I know that fentanyl addicts on the street do not regularly stockpile large amounts of fentanyl but rather tend to buy a small amount

**Page 9 – Affidavit of Jarrett Miller**

of what they need and then resupply themselves when they run out. I know that a user of powdered fentanyl will use it in quantities of less than 1/10 of a gram and will regularly buy it in amounts of less than a gram up to two to three grams at a time. I know that dealers of powdered fentanyl will often buy fentanyl in larger quantities and then break off and sell it in smaller qualities, sometimes prepackaging the smaller quantities of fentanyl for sale. I know that a person possessing over 10 grams of fentanyl powder does not possess the powder for personal use but rather such a quantity indicates that it is possessed for purposes of further distribution.

26.    I also know that methamphetamine is a Schedule II controlled substance. I also know from training and experience that methamphetamine in its illicit form is a highly addictive stimulant that causes both short-term and long-term psychiatric effects. Users of methamphetamine often experience extreme agitation, anxiety, paranoia, visual and auditory hallucinations. Because methamphetamine is a very potent stimulant, users of methamphetamine run the risk of seizures, elevated blood pressure, stroke, and death. I also know, based upon my training an experience, that methamphetamine is typically used in quantities of one-tenth (.1) to one-quarter (.25) of a gram, either intravenously or by being smoked. I know users of methamphetamine commonly possess a lighter and a glass pipe, referred to as a "meth pipe," to smoke methamphetamine and this pipe typically has dark discoloration from the user burning methamphetamine within it. I know a gram of methamphetamine on the street can sell for around $10 to $20 and that users typically buy only gram to several grams at a time. A "ball" or an "eight-ball," which is roughly 3.5 grams, or 1/8th of an ounce, is a common amount for a user to buy and possess. I know that methamphetamine addicts on the street do not regularly stockpile large amounts of methamphetamine but rather tend to buy a small amount of what they need and then resupply themselves when they run out. Accordingly, I know that a person possessing

approximately 20 grams of methamphetamine does not possess it for personal use but rather such a quantity indicates that it is possessed for purposes of further distribution.

27.    I also know from my training and experience that drug traffickers possess firearms as "tools of the trade" in furtherance of their drug trafficking activities. I know that drug traffickers possess firearms for a variety of reasons, to include: first, having an accessible gun provides defense against anyone who may attempt to rob the trafficker of their drugs or drug profits; second, possessing a gun, and letting everyone know that you are armed, lessens the chances that a robbery will even be attempted; third, having a gun accessible during a transaction provides protection in case a drug deal turns sour; fourth, the visible presence of a gun during the transaction may prevent the deal from turning sour in the first place; and, fifth, having a gun may allow the drug trafficker to defend their residences or "stash houses" from which they operate. I also know that the cocaine trade in Portland, Oregon is inherently dangerous and commonly cocaine dealers possess guns for protection.

### Conclusion

28.    Based on the foregoing, I have probable cause to believe, and I do believe, that **Justin** and **Crystal** have committed the Target Offenses, and that **Justin** has committed Felon in Possession Offense, and I therefore request that the Court issue a criminal complaint and arrest warrant for **Justin** and **Crystal**.

///

///

///

 **Page 11 – Affidavit of Jarrett Miller**

29.     Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) James Kilcup.  AUSA Kilcup has advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*By phone pursuant to Fed R. Crim. P. 4.1*
JARRETT MILLER
Special Federal Officer
Federal Bureau of Investigation

Subscribed and sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at __4:25__ a.m./p.m. on April 3, 2026.

_____
HONORABLE JOLIE A. RUSSO
United States Magistrate Judge

**Page 12 – Affidavit of Jarrett Miller**