SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**NATASHA M. GEILING, CASB #341432**
Natasha.Geiling@usdoj.gov
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:26-mj-00091 |
| v. | **GOVERNMENT'S MOTION TO REVOKE RELEASE ORDER** |
| **JUSTIN CLAYTON HOLDER,** | |
| **Defendant.** | |

Defendant Justin Clayton Holder has a criminal history spanning nearly three decades with two dozen failures to appear. On April 2, 2026, the defendant—who was on state post-prison supervision and had outstanding felony warrants for eluding police, among other crimes—was arrested for dealing commercial quantities of fentanyl and methamphetamine in the Portland area. During the defendant's arrest, law enforcement seized nine firearms, including four stolen firearms, from the defendant's person, his vehicle, and a hotel room that the defendant shared with his wife and their minor child.

The defendant has been charged via criminal complaint with narcotics offenses for which the maximum penalty exceeds ten years, and with possessing a firearm in furtherance of a drug

**Government's Motion to Revoke Release Order** **Page 1**

trafficking crime.  Based on these charges, the law presumes that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community.  The extremely serious nature of the underlying offense, as well as the defendant's lengthy history of failures to appear, failures under supervision, and failures to obey the orders of both law enforcement and the courts, strengthen this presumption.  The defendant failed to provide sufficient evidence to rebut this presumption.  The defendant is a danger to the community and a significant risk of non-appearance and no condition or combination of conditions can acceptably mitigate those risks.  The government therefore respectfully requests that the court to conduct a *de novo* review of the U.S. Magistrate Judge's release order and revoke defendant's pretrial release order.

## I.    BACKGROUND

### Defendant's Arrest

The defendant was arrested April 2, 2026, after selling methamphetamine to a government informant.  In the days leading up to the defendant's arrest members of the Multnomah County Sheriff's Department Special Investigations Unit (SIU) and the Federal Bureau of Investigations (FBI) organized a controlled purchase of methamphetamine between a Cooperating Defendant (CD) and an individual known to the CD as "JC," who was eventually revealed to be the defendant.

Prior to initiating the controlled purchase, the CD told law enforcement that they purchased the methamphetamine from a male they knew as JC, and that JC sold commercial quantities of methamphetamine and fentanyl and possessed firearms.  The CD allowed law enforcement to search their phone where they observed a phone number saved under the name JC.  SIU analysts searched for the phone number in a data source and discovered that it was

**Government's Motion to Revoke Release Order**                    **Page 2**

associated with the name Justin Holder.  Law enforcement showed the CD a Multnomah County booking photo of the defendant and the CD told law enforcement that was the male they knew as JC.

The CD contacted the defendant by phone in the presence of law enforcement, who heard the defendant agree to sell the CD methamphetamine and instructed the CD to meet him at the Holiday Inn located on NE Columbia Ct. in Portland, Oregon, where the defendant was staying.

Members of the FBI and the SIU went to the Holiday Inn to conduct surveillance on the controlled purchase.  They saw a white Jeep in the Holiday in parking lot.  It was occupied by a male that law enforcement positively identified as the defendant.  Law enforcement watched the CD and the defendant walk together into the side door of the hotel.  The defendant was carrying a large black backpack that sagged at the bottom, appearing to contain a weighted or heavy object.  Law enforcement subsequently observed the defendant and the CD exit the hotel.  The defendant then walked back to the Jeep which was later identified as stolen.

The CD contacted law enforcement and handed them a bag containing a crystalline substance that later field-tested positive for the presence of methamphetamine.  The CD told law enforcement that the defendant sold him methamphetamine in defendant's hotel room at the Holiday Inn.  The CD also told law enforcement that the defendant had a firearm on his person during the drug deal.

A short time after the controlled buy, law enforcement observed a female and minor get into the Jeep with the defendant.  A short distance from the hotel, the defendant stopped the vehicle at a stop light and turned on the hazard lights as he opened the driver's side door.  Due to the defendant's history of eluding police, SIU officers and FBI agents activated their police lights and pinned in the vehicle.  The defendant and his wife were then taken into custody.

**Government's Motion to Revoke Release Order**                                    **Page 3**

Law enforcement searched the defendant and located a stolen and loaded Walther 9mm handgun in his waistband, multiple baggies of suspected fentanyl, multiple bundles of U.S. currency, a cellphone, and a Holiday Inn room key card. A search of the Jeep revealed a stolen FN .22 caliber handgun, a Walther .22 caliber handgun with no serial number, and two containers of suspected fentanyl.

The defendant's wife told law enforcement that she, the defendant, and their minor child were staying at the Holiday Inn; the wife then stated the room number, which the minor confirmed. Their minor child had previously been reported missing by his legal guardians in Florida. Law enforcement confirmed that the key card found on the defendant provided access to the room that the wife had identified. Law enforcement cleared and secured the room and obtained a search warrant.

Officers recovered bags of suspected methamphetamine, suspected fentanyl, and suspected cocaine as well as six firearms, including a semiautomatic AR-15 rifle with no serial number, a stolen Smith and Wesson MP-15 rifle, and a stolen M&P FPC 9mm handgun. In total, law enforcement seized nine firearms (five rifles and four handguns), four of which were stolen and two of which had no serial number, approximately 723 grams of methamphetamine, approximately 220 grams of fentanyl, approximately 78 grams of cocaine, and $18,299 cash from the defendant, the Jeep, and the hotel room.

///

///

///

///

///

**Government's Motion to Revoke Release Order**                    **Page 4**

Pictures of the firearms, drugs, and cash seized from the scene are depicted below:





Defendant was charged by complaint with two counts of Possession with Intent to Distribute in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B), one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c), and one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g). ECF 1. The two drug charges carry a maximum sentence of 40 years' imprisonment and a mandatory minimum sentence of five years imprisonment. The violation of 18 U.S.C. § 924(c) also carries a consecutive mandatory minimum sentence of five years imprisonment. Based on the defendant's

**Government's Motion to Revoke Release Order**                    **Page 5**

criminal history and the presence of a gun on the defendant's person at the time of the offending conduct, there is nothing that allows a court to impose less than the mandatory minimum sentence with respect to the drug offenses and the firearms offense.

### Initial Appearance and Detention

On April 7, 2026, the defendant made his initial appearance in federal court. ECF 5. Defendant did not request release and was detained for risk of non-appearance and as a danger to the community. *Id.* The defendant's detention was ordered without prejudice, permitting the defendant to seek review of detention at a later date. *Id.*

### Review of Detention Hearing

On May 1, 2026, at the request of defense counsel and with consent of the government, the Court set a review of detention hearing for May 6, 2026. ECF 10.

At the hearing, U.S. Pretrial Services recommended release. The government opposed release and requested that the defendant continue to be detained pretrial as both a risk of non-appearance and as a danger to the community. Following the arguments of the parties, U.S. Magistrate Judge Stacie F. Beckerman agreed to release the defendant to residential treatment. ECF 11.

## II.    APPLICABLE LAW

### A.    A. Rules of Evidence Do Not Apply at Detention Hearing.

"The Federal Rules of Evidence do not apply in detention proceedings. Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f). Accordingly, both the government and the defense may present evidence by proffer or hearsay. *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986); *see also United States v. Bibbs*, 488 F.Supp.2d 925, 925-26 (N.D. Cal. 2007).

///

**Government's Motion to Revoke Release Order**                                    **Page 6**

**B.    B. Standard of Review by the District Court is *De Novo*.**

The district court reviews a magistrate judge's release decision *de novo*. *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). In doing so, the district court should "make its own independent determination," giving the magistrate judge's findings "no deference." *Id.*

**C.    There is a Rebuttable Presumption of Detention.**

Under the Bail Reform Act, 18 U.S.C. § 3142, *et seq.*, which governs the detention of a defendant pending trial, the Court shall order a defendant detained if, after a hearing, it finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." Generally, the United States bears the burden of establishing danger to the community by clear and convincing evidence; risk of flight need only be proved by a preponderance of the evidence. *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990); *Winsor*, 785 F.2d at 757.

Where there is probable cause to believe that the defendant committed a Title 21 narcotics offense and the maximum penalty for that offense is a term of imprisonment of 10 years or more, or a violation of Title 18, United States Code, Section 924(c), the law creates a presumption that no condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(3)(A) and (B). In such a case, the burden of proof shifts to the defendant to rebut the presumption of detention. *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986). The criminal charges in this case create a presumption of pretrial detention.

Concern about the safety of the community is not limited to concerns about violence; rather it is the *risk* that a defendant will continue committing crimes while on release, such as drug dealing, that warrants their continued detention as a danger to the community. *United*

**Government's Motion to Revoke Release Order**                                    **Page 7**

*States v. Hare*, 873 F.2d 796, 798-99 (5th Cir.1989) (Congress has determined "that drug offenders pose a special risk of flight and dangerousness to society.").  Congress included the presumption of detention in the Bail Reform Act with an eye towards the particular dangers posed by those charged with "major drug felonies," who "are often in the business of importing or distributing dangerous drugs, and thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism."  S.REP. NO. 98-225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3203 (Bail Reform Act)

The presumption in favor of detention, as both a flight risk and danger to the community, does not vanish if a defendant comes forward with some evidence to rebut it, but rather it remains an evidentiary factor to be evaluated.  *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985); *see also United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992); *United States v. Rodriguez*, 950 F.2d 85, 88 (2nd Cir. 1991); *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989).  Were the presumption to vanish, "courts would be giving too little deference to Congress' findings regarding this class." *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1986).

The degree of danger posed by a defendant charged with narcotics trafficking is critical. *United States v. Leon*, 766 F.2d 77, 81 (2nd Cir. 1985).  To determine that degree and decide if a defendant should be detained pending trial, a judicial officer must look to the nature and circumstances of the crime charged; whether the crime involved violence or drugs; the personal history of the person, the seriousness of the danger posed by the person's release; and, the evidence of the individual's guilt.  *Id.*

**Government's Motion to Revoke Release Order**                                        **Page 8**

If the defendant proffers evidence to initially rebut the presumption of dangerousness or risk of non-appearance, the Court should then examine the following four factors in deciding whether release is appropriate:

(1)     the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance . . . ;

(2)     the weight of the evidence against the person;

(3)     the history and characteristics of the person, including –

    (A)     the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearances at court proceedings; and

    (B)     whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal . . . ; and

(4)     the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g).

## III.    ARGUMENT

This Court should reverse the release order.  The defendant was selling significant amounts of fentanyl and methamphetamine, two extremely addictive, destructive, and deadly drugs contributing to criminal activity throughout the Portland community.  The defendant sold methamphetamine to the CD, as observed by law enforcement, while carrying a stolen, loaded firearm on his person, with two additional firearms in his vehicle and six additional firearms in his hotel room.  Of particular concern, the defendant possessed these firearms and drugs in the presence of a minor child.  And the defendant committed these crimes while on post-prison

**Government's Motion to Revoke Release Order**                                          **Page 9**

supervised release, and with active, outstanding felony warrants including a warrant for eluding the police.

In light of the presumption of detention, the defendant's extensive history of nonappearance, and the seriousness of the underlying offense, the government asks that the Court detain the defendant pending trial as both a danger to the community and a risk of nonappearance.

**A. Nature and Circumstances of the Offense**

The defendant's crimes are extremely serious. The amount of methamphetamine and fentanyl seized during the arrest and subsequent search of the defendant's hotel room would be enough to subject the defendant to some of the harshest drug-related penalties under federal law. But the defendant was not just distributing commercial quantities of methamphetamine and fentanyl—two extremely destructive substances—into the Portland community; he was doing so while possessing a trove of firearms, many of which were stolen, and some of which were without serial numbers. These firearms increase exponentially the seriousness and dangerousness of the underlying drug offenses, a fact that Congress recognized when it created the severe federal charge of possessing a firearm in furtherance of a drug trafficking crime, which adds a mandatory minimum of five additional years imprisonment on top of the penalties for the underlying drug trafficking crimes. *See* 18 U.S.C. 924(c). Additionally, the defendant possessed these firearms and drugs—and sold them—in the presence of his minor child, evincing a clear disregard for the minor's safety and wellbeing.

The quantity of drugs and possession of nine firearms—four of which were stolen— undercuts the narrative set forth by the defendant at the review of detention hearing that the defendant is a merely an addict struggling to remain clean. While the defendant has an extensive

**Government's Motion to Revoke Release Order** **Page 10**

history with substance abuse, the underlying offense conduct cannot be explained away as merely the behavior of an addict.  The defendant possessed over 700 grams of methamphetamine and over 200 grams of fentanyl.  These are not amounts that are typical of personal use.  Nor is the possession of nine firearms, including four stolen firearms, behavior indicative of someone who is simply trying and struggling to remain clean.  Rather, distribution-level quantity of drugs, combined with the presence of firearms, suggests that the defendant is engaged in the kind of "business of importing or distributing dangerous drugs" that Congress was particularly concerned with when it created the presumption of detention in the Bail Reform Act.  S.REP. NO. 98-225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3203 (Bail Reform Act)

### B. Weight of the Evidence

The proof against the defendant is summarized above and in the affidavit in support of the criminal complaint.  The case against the defendant is extremely strong: the defendant was observed by law enforcement immediately before and after a controlled buy with the CD; he was arrested shortly after the controlled buy and found to have a stolen, loaded handgun, multiple baggies of suspected fentanyl, and bundles of cash on his person; a search of stolen car that he was driving revealed two more firearms, including one that was stolen; and a search of the hotel room that he had the key to, and which his wife and minor child confirmed he was staying in, revealed multiple bags of suspected methamphetamine, multiple bags of suspected fentanyl, a bag of suspected cocaine, and six additional firearms, including two more which were stolen.

The strength of the evidence increases the defendant's incentive to flee.  He was caught with significant amounts of fentanyl and methamphetamine and now faces a statutory maximum of forty-five years imprisonment; at a minimum, defendant faces ten years imprisonment with no

**Government's Motion to Revoke Release Order**                                    **Page 11**

reason to believe that a court will be able to impose anything less than this statutory minimum. As discussed more below, the defendant has a history of eluding and failing to appear on far less serious charges; there is no reason to believe that his behavior will change now that he faces significant federal exposure.

## C. Defendant's History and Characteristics

The history and characteristics of the defendant also warrants his continued detention as both a risk of non-appearance and as a danger to the community.  The defendant has struggled to maintain legal employment and instead made his living by distributing methamphetamine and fentanyl to people in the Portland community.  The defendant has a lengthy criminal history dating back to 1999, with crimes occurring in Washington, Oregon, and California.  At the review of detention hearing, the defendant sought to cast this history as largely involving petty crimes and indicative of an individual struggling with addiction.  Defendant's criminal history is littered with possession charges, but it also includes a 2011 felony conviction for delivery of heroin.  In addition, the defendant has two felony convictions for assault.

In addition to these convictions, the defendant's criminal history is replete with instances of nonappearance and noncompliance, which should be viewed as indicative of the risk of nonappearance posed by the defendant's release.

### Failures to Appear

Consistent throughout the defendant's criminal history is the defendant's record of failing to appear.  Based on review of the defendant's criminal history, the defendant has at least 23 failures to appear:

- One failure to appear related to a May 2, 1999, charge for Driving Under the Influence out of Pacific County, Washington;

**Government's Motion to Revoke Release Order**                    **Page 12**

- One failure to appear related to May 7, 2004, charges for Theft and Delivery of Controlled Substances out of Wasco County, Oregon;

- Four failures to appear related to a June 6, 2004, charge for Violation of a Court Order out of Long Beach, Washington;

- Four failures to appear related to a February 9, 2010, charge for Driving While License Suspended III out of Cowlitz County, Washington;

- Four failures to appear related to a September 4, 2010, charge for Obstruction of Law Enforcement out of Pacific County, Washington;

- One failure to appear related to a January 1, 2013, charge for Possession of Methamphetamine out of Douglas County, Oregon;

- One failure to appear related to a July 4, 2016, charge for Assault out of Pacific County, Washington;

- One failure to appear related to a May 28, 2017, charge for Harassment out of Clackamas County, Oregon;

- One failure to appear related to a March 1, 2019, charge for Driving While License Suspended III out of Pacific County, Oregon;

- Two failures to appear related to July 12, 2019, charges for Unlawful Possession of Heroin;

- Two failures to appear related to a November 25, 2020, charge for Theft;

- One failure to appear, for which a bench warrant was issued, out of Clatsop County, on February 9, 2023;

- One failure to appear, for which a bench warrant was issued, out of Clatsop County, on September 28, 2023; and

**Government's Motion to Revoke Release Order**                                    **Page 13**

- One failure to appear related to August 3, 2025, charges for Fleeing or Attempting to Elude a Police Officer, Unauthorized Use of a Vehicle, Unlawful Possession of Fentanyl, Unlawful Delivery of Fentanyl, and Recklessly Endangering Another Person.

Defendant has been failing to appear consistently for the entirety of his nearly thirty-year criminal history. He has failed to appear for misdemeanor charges and felony charges; he has failed to appear with and without supervision. The defendant's nonappearance is a constant in his past and should be viewed as an indication of what he is likely to do in the future.

At the review of detention hearing, the defendant argued, and the Magistrate Judge accepted, that his risk of nonappearance could be mitigated by placement into residential treatment. But given the defendant's underlying charges, there is a presumption that *no* combination of conditions—including residential treatment—could adequately assure his appearance. Defendant offers little if any evidence to rebut this presumption, and his history of consistent nonappearance only bolsters the presumption that anything less than custodial detention will be insufficient.

### Eluding

Not only is the defendant's criminal history replete with instances of nonappearance, but the defendant has also engaged in behavior that exceeds a standard failure to appear and rises to the level of criminal elude. The defendant has a 2019 conviction for felony fleeing or attempting to elude a police officer, with an associated conviction for reckless driving. This conviction illustrates a level of criminality on the part of the defendant that goes beyond failure to appear and evidences a proactive choice on the part of the defendant to evade law enforcement in such a way as to place both law enforcement and the community at large at risk. And while the

**Government's Motion to Revoke Release Order**                    **Page 14**

defendant only has one conviction for attempting to elude, the defendant has continued to engage in this behavior, as evidenced by his criminal history.  The defendant has a February 6, 2023, charge for felony fleeting or attempting to elude a police officer, with an associated charge for reckless driving, though no complaint was filed.  And the defendant has pending charges for fleeing or attempting to elude a police officer, unauthorized use of a vehicle, and recklessly endangering another, from less than a year ago.  Prior attempts to resist or evade law enforcement are factors that weigh in favor of pre-trial detention.  *United States v. Smith*, 2020 WL 3066623, *3 (W.D. Ken. June 6, 2020) (unpublished).

### Violations of Supervision

In addition to a history of nonappearance, the defendant has a history of violations of probation, including:

- One probation violation associated with a January 10, 2012, conviction for Delivery of Heroin out of Douglas County, Oregon;

- One probation violation associated with a January 7, 2013, conviction for Possession of Methamphetamine out of Douglas County, Oregon;

- One probation violation associated with an October 20, 2023, conviction for felony fleeing or attempting to elude a police officer and misdemeanor reckless driving; and

- One probation violation associated with an October 20, 2023, conviction for Unlawful Possession of Heroin.

Notably, the defendant was under post-prison supervision with Clatsop County Community Corrections with conditions to include no alcohol, no intoxicants, and to not use or possess controlled substances, when he was arrested for the present offense.  Clearly, the

**Government's Motion to Revoke Release Order**                                   **Page 15**

imposition of conditions was not sufficient to prevent the defendant from engaging in the serious offense of distributing commercial quantities of methamphetamine and fentanyl while possessing firearms. There is no reason to believe that any combination of conditions ordered in this case will suddenly render a different result.

In granting the defendant's request for release, the Magistrate Judge focused on the fact that the defendant had never been subject to federal supervision, suggesting that federal supervision would succeed where state supervision had failed. But there is no reason to think that the defendant will do any better under federal supervision than he has done under state supervision. The defendant has been subject to supervision in five different counties across his nearly thirty-year criminal history. The defendant has had ample opportunity to avail himself of the services that these counties offer. That the defendant has failed to do so, or failed to do so successfully, does not mean that he will suddenly begin to do so now that he is presented with federal supervision. As the defendant has shown, the provenance of his supervision does not change the ultimate outcome, which is noncompliance.

## D. Nature and Seriousness of the Danger Posed

Given the presumption of detention that comes along with the charges, Congress has recognized that drug dealers pose a serious risk to the community and that there is a substantial risk that they will return to dealing drugs if released pending trial. The defendant was engaged in distribution of commercial quantities of methamphetamine and fentanyl, which are highly addictive substances that are dangerous in even small amounts. That the defendant committed the instant offenses in the presence of his own minor child illustrates his flagrant disregard for the dangers of his actions.

The defendant sought, and the Magistrate Judge granted, release to a residential treatment center; in so granting, the Magistrate Judge noted that it would be inappropriate to release the defendant with less restrictive conditions based on his history and the nature of the offense. But residential treatment is not custodial; if the defendant were to decide that he no longer wanted to participate in treatment, the residential treatment center could not require his appearance or assure the safety of the broader community. The underlying charges create a presumption that no combination of conditions short of detention could do this. The defendant's stated desire to change is not sufficient evidence to rebut the presumption; even if it were, it cannot overcome the nearly thirty-year history of nonappearance and noncompliance, particularly when that history is considered alongside the presumption of detention. *See, e.g.*, *United States v. Collum*, 2023 WL 4777897, at \*2 (E.D. Wa. July 26, 2023) (finding that the Defendant's interest in substance abuse treatment did not outweigh the evidence favoring detention including "the nature and seriousness of the danger to the community posed by Defendant's release . . . given Defendant's recent failures to comply with law enforcement and possession of a firearm while on supervised release, as well as Defendant's history of eluding and resisting law enforcement.").

Based on the nature of the offense and the defendant's history and characteristics, there is no condition or combination of conditions that this Court can impose that will sufficiently mitigate the risk that the defendant will become noncompliant with the conditions of his release, that he will then return to selling narcotics, and that he will do so while possessing firearms. The defendant should be detained.

///

///

///

**Government's Motion to Revoke Release Order**                                    **Page 17**

## IV.      CONCLUSION

For the reasons set forth herein, we respectfully request that following *de novo* review of the Magistrate's Release Order, the Court find that the defendant poses an unacceptable risk of non-appearance at future court hearings and that he is a danger to the community and that he should remain in pretrial custody pending trial.

Dated: May 8, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Natasha M. Geiling*
NATASHA M. GEILING
Assistant United States Attorney